CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

JUL 0 7 2023

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 4:18-cr-00012 |
| v. | ) |
| | ) |
| JALEN CORMARRIUS TERRY, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant/Petitioner | ) |

## MEMORANDUM OPINION

Jalen Cormarrius Terry, a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 785. Terry also has filed a motion to amend or correct his § 2255 petition. ECF No. 792. The government responded to Terry's motions, arguing that he is not entitled to relief. ECF No. 801. Terry did not reply to the government's response. After reviewing the record, the court **GRANTS** Terry's motion to amend or correct his § 2255 petition, ECF No. 792, and has considered the arguments made therein. The court nevertheless **DENIES** Terry's motion to vacate, set aside, or correct his sentence, ECF No. 785.

### I. Background

On June 11, 2018, Terry, along with seven codefendants, was named in a fifteen-count indictment alleging racketeering, attempted murder, and firearms offenses. According to the statement of facts (SOF) signed by Terry, he was a member of a criminal organization known as the Milla Bloods ("Millas"). The Millas are a street gang affiliated with the New York Bloods Nation and have engaged in criminal activity in the Western District of Virginia, including murder, attempted murder, assault, assault with a dangerous weapon,

robbery, obstruction of justice, drug distribution and trafficking, and conspiracy to commit those crimes. SOF, ECF No. 565 at 1.

On June 15, 2016, Terry, along with his codefendants, went to an apartment complex in Danville, Virginia at the behest of another gang member, Tredarious Keene, for the purpose of shooting and possibly killing Dwight Harris and Armonti Womack. At the apartment complex, the Millas met up with another gang, the Rollin 60s Crips ("Rollin 60s"). The Millas members and Rollin 60s Crips members together agreed to shoot and potentially kill Harris and Womack. Gunfire ensued, and Womack and a member of the Millas were injured, but no one was killed. Id. at 3.

In the summer of 2016, the Millas and the Rollin 60s agreed to join forces against another gang in the area, known as the 9-Trey Bloods. At a meeting between members of the Millas and the Rollin 60s, which Terry attended, it was agreed that the Millas and the Rollin 60s would join forces to sell drugs and buy guns at the expense of a rival gang called the Billy Bloods. At some point, DaShawn Anthony, a leader of the Millas, instructed the other gang members to kill Stevie Wallace, the leader of the Billy Bloods. Id.

Members of the Millas and Rollin 60s planned to kill Wallace. On August 26, 2016, gang members gathered in an apartment complex to carry out their plan but ended up shooting at a van in that pulled into the parking lot that was occupied by people who were not the target of the gang attack. The passenger in the van was killed but the driver was not injured. Terry was not present at the planning meetings although he later learned of the plans. He also was not at the apartment during the shooting and was not charged in the murder of the van passenger or with attempted murder of the van driver. During the

2

conspiracy, Terry conspired with others to distribute, and did, in fact, distribute, marijuana on behalf of the racketeering enterprise. Id. at 4–5.

Terry was charged with conspiring to participate in a pattern of racketeering activity that included murder in violation of Virginia statutory and common law; robbery in violation of Virginia statutory and common law, tampering with a witness, and trafficking in controlled substances, all in violation of 18 U.S.C. §§ 1962(d) and 1963 (Count 1); violent crime in aid of racketeering, based on the attempted murder of Armonti Devine Womack, in violation of 18 U.S.C. §§ 2 and 1959(a)(5) (Count 2); use of a firearm during a violent crime in aid of racketeering based on the attempted murder of Armonti Devine Womack, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii) (Count 3); violent crime in aid of racketeering based on the assault with a dangerous weapon of Armonti Devine Womack, in violation of 18 U.S.C. §§ 2 and 1959(a)(3) (Count 4); use of a firearm during a violent crime in aid of racketeering, based on assault with a dangerous weapon of Armonti Devine Womack in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii) (Count 5); violent crime in aid of racketeering based on the attempted murder of Dwight Montel Harris in violation of 18 U.S.C. §§ 2 and 1959(a)(5) (Count 6); use of a firearm during a violent crime in aid of racketeering, based on the attempted murder of Dwight Montel Harris in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii) (Count 7); violent crime in aid of racketeering based on assault with a dangerous weapon of Dwight Montel Harris in violation of 18 U.S.C. §§ 2 and 1959(a)(3) (Count 8); use of a firearm in aid of racketeering based on assault with a dangerous weapon of Dwight Montel Harris in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii) (Count 9). The remaining counts in the indictment involve the murder and

3

attempted murder of the people in the van, and Terry was not charged in those counts. Indictment, ECF No. 5.

On May 31, 2019, the government moved to dismiss without prejudice Counts 5, 9, and 15 and the motion was granted. The court also dismissed Counts 4, 8, and 14 on motion of defendants. See Mem. Op. and Order, ECF Nos. 395, 396.

On March 6, 2020, Terry entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and pled guilty to Counts 1 and 3 the same day. ECF Nos. 562–565. As part of the plea agreement, Terry stated that "[d]uring and in furtherance of the conspiracy, I personally agreed to commit acts chargeable under Virginia Code §§ 18.2-32, 18.2-22 (conspiracy to commit murder), Virginia Code §§ 18.2-32, 18.2-25 and 18.2-26 (attempted murder), and 21 United States Code §§ 841 and 846 (conspiracy to distribute a controlled substance, to-wit: marijuana)." Plea Agreement, ECF No. 563 at 1–2.

Count 1 carried a maximum statutory penalty of 20 years and Count 3 carried a maximum statutory penalty of life imprisonment. Id. at 1–2. The parties agreed to a sentencing range of 180 to 204 months. Id. at 4. As part of the agreement, Terry waived his right to appeal except for any issue which could not be waived by law. Terry further agreed to waive his right to collaterally attack his sentence unless the attack was based on ineffective assistance of counsel. Id. at 8–9.

On October 29, 2020, Terry was sentenced to 84 months on Count 1 and 120 months on Count 3, with the sentences to run consecutively for a total of 204 months. His term of incarceration is to be followed by a 5-year term of supervised release. J., ECF No. 698. Terry did not appeal his sentence.

4

On September 27, 2021, Terry placed his § 2255 motion in the mailbox at Federal Correctional Institution (FCI) Butner where he is housed. The motion was returned because of insufficient postage, but inadvertently was sent to the incorrect housing unit by prison authorities. Several months later, the mistake was discovered, and the motion was delivered to Terry, who remailed his motion with proper postage to the court where it was docketed on December 29, 2021. Mot., ECF No. 785 at 1, and Letter from T. Walker, CCC, ECF No. 785-2 at 2.

In his motion, Terry alleges that his conviction on Count 3 for violating 18 U.S.C. § 924(c) is unconstitutional because the predicate of the conviction no longer qualifies as a crime of violence. On February 24, 2022, Terry filed a motion to amend or correct his motion to vacate, in which he seeks to add an ineffective assistance of counsel claim. Mot., ECF No. 792. The government has responded in opposition to both motions.

## II. Analysis

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

5

## A. Timeliness of Motion

The government first moves to dismiss Terry's motion as untimely. Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year statute of limitations set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Terry's conviction became final on November 24, 2020, which was fourteen days after the court entered judgment in his case. See Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. Crim. P. 4(1)(A). Using that date as the starting point, the one-year limitations period for filing his § 2255 motion expired on November 24, 2021. Because he did not file his motion until sometime in December,[1] it was untimely under § 2255(f)(1).

Terry asserts that he should be excused for missing the deadline to file his petition because of the mistake on the part of FCI Butner. Mot., ECF No. 785-1 at 8. The court reads his assertion as a request to apply the rule in Houston v. Lack, 487 U.S. 266 (1988),

---

[1] There is no postmark on the envelope in which Terry sent his motion. See ECF No. 785-3. It was received by the court on December 29, 2021 and Terry did not contest that it was not filed until after the November 24, 2021 deadline.

that a document submitted to a court by a prisoner is deemed filed when it is placed in the prison mailbox, or, alternatively, as an argument that he is entitled to equitable tolling.

In Houston, the Court held that for prisoners proceeding pro se, notices of appeal to the federal courts of appeals are considered filed at the moment of delivery to prison authorities. The court reasoned that unlike nonincarcerated litigants, a pro se petitioner cannot hand deliver a notice of appeal to the appropriate courthouse and cannot hand mail directly to the postal service. Nor can an incarcerated litigant call the court to determine whether a pleading has been filed or stamped. In addition, pro se incarcerated petitioners have no choice but to entrust the forwarding of the document to prison officials whom they cannot control or supervise. Id. at 270–71. The Court concluded that a notice of appeal from a pro se petitioner is deemed filed at the time it is delivered to prison authorities for mailing. Id. at 276.

The holding in Houston was codified in Rule 3(d) of the Federal Rules Governing 28 U.S.C. §§ 2254 and 2255 cases:

> Rule 3(d) Inmate Filing. A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

In Terry's case, it is undisputed that he submitted his motion to prison authorities for mailing on September 27, 2021, almost two months before the limitations period ran, albeit with insufficient postage. Walker Letter, ECF No. 785-2 at 2. However, because Terry did

not affix sufficient postage to the motion, he cannot make the showing under Rule 3(d) that first-class postage was prepaid, meaning his filing was not timely under the rule.

Nevertheless, given the circumstances surrounding Terry's attempt to timely file his document, the court finds that equitable tolling should apply. See Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (noting that the statute of limitations in federal habeas cases is subject to equitable tolling). "Equitable tolling of petitions for collateral review is available only when a defendant demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Whiteside v. United States, 775 F.3d 180, 184 (4th Cir. 2014) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)). Under the "extraordinary circumstances" test, a movant must show "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse, 339 F.3d at 246. "Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

Terry delivered the motion to prison authorities for mailing two months before the deadline to file it in court. It was returned to the prison for insufficient postage and apparently misrouted to another unit, where it went undiscovered until well after the filing deadline had passed. Although it is unclear exactly when it was found, according to the officer who wrote the December 24, 2022 letter, Terry's motion had been "recently" discovered and routed to Terry. Letter from T. Walker, CCC, ECF No. 785-2 at 2.

8

Had the letter been returned to Terry when it was received by prison authorities with the notation that it needed additional postage, Terry could have timely resubmitted it. However, it was misplaced for several months without his knowledge, rendering him unable to resubmit it in a timely manner. Under these facts, the court finds that extraordinary circumstances beyond Terry's control prevented him from filing his motion on time. Thus, Terry is entitled to equitable tolling of the statute of limitation, and his motion is deemed timely filed.

### B. Effect of Waiver

As part of the plea agreement, Terry agreed to waive his right to collaterally attack any order issued in this matter, unless such attack was based on ineffective assistance of counsel, and further agreed that he would not file any document seeking to disturb any such order, unless the filing was based on ineffective assistance of counsel. Plea Agreement, ECF No. 563 at 9. A waiver of appeal and collateral attack is valid if the waiver was knowing and voluntary. In the absence of extraordinary circumstances, a properly conduced Rule 11 colloquy establishes the validity of the waiver. United States v. Adams, 814 F.3d 178, 182 (4th Cir. 2016) (citing United States v. Copeland, 707 F.3d 522, 529 (4th Cir. 2012), and United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005)). A court also must determine whether the issue appealed is within the scope of the waiver. Copeland, 707 F.3d at 528.

At the guilty plea hearing in this case, Terry stated that he had gone over the plea agreement with his attorney, and had initialed each page and signed the bottom, indicating that he agreed with its terms. Plea Hr'g Tr., ECF No. 583 at 9. Counsel for the government read the terms of the plea agreement into the record, including that Terry waived his right to

collaterally attack his sentence, except for any issue that could not be waived as a matter of law. Id. at 15. The court also explained to Terry that he was giving up his right to collaterally attack his sentence, except for claims of ineffective assistance of counsel, and explained what that meant. Id. at 29. Terry told the court that he understood the terms of the plea agreement and had no questions. Id. at 15, 30. Accordingly, the record establishes that Terry knowingly and intelligently waived his right to collaterally attack his sentence and thus the waiver is valid.

The court must next consider whether Terry's challenge to his conviction falls within the scope of the appeal waiver. Terry argues in his motion that his conviction on Count 3 for violation of 18 U.S.C. § 924(c), for use of a firearm during a violent crime in aid of racketeering, was unconstitutional. He contends that the Count 3 conviction was predicated on Count 1, the RICO conspiracy charge, and that RICO conspiracy is not a crime of violence after Johnson v. United States, 135 S.Ct. 2552 (2015), and United States v. Davis, 139 S.Ct. 2319 (2019). Terry waived his right to collaterally attack any order issued in his case, unless the attack was based on ineffective assistance of counsel. His attack on Count 3 is not based on ineffective assistance of counsel and therefore falls within the scope of the waiver.

In addition, to the extent Terry is arguing that he is entitled to relief based on United States v. Simmons, 11 F.4th 239, (4th Cir. 2021), which was issued after Terry was convicted, the case does not help him.[2] Simmons applied the categorical approach to the RICO

---

[2] In his motion, Terry stated that "Ground one is based on a newly recognized right made retroactive by the Supreme Court," although he did not cite Simmons in his memorandum in support of his motion. ECF No. 785 at 9–10; ECF No. 785-1. Also, Simmons is not a Supreme Court case made retroactive on collateral

conspiracy statute, 18 U.S.C. § 1962(d), and determined that convictions for RICO conspiracy and aggravated RICO conspiracy are not crimes of violence for purposes of 18 U.S.C. § 924(c). See discussion, Simmons, 11 F.4th at 253–261. "Simmons determined that because an aggravated RICO conspiracy offense can be completed "without using, attempting to use, or threatening to use physical force, [ ] an aggravated RICO conspiracy is not categorically a crime of violence." United States v. Fallin, No. 20-7702, 2022 WL 2752527, at *6 (4th Cir. July 14, 2022) (quoting Simmons, 11 F.4th at 260).

But Terry's § 924(c) conviction was not predicated on his Count 1 racketeering conspiracy conviction. Rather, it was predicated on Count 2 of the Indictment, "Violent Crime in Aid of Racketeering, to-wit: Attempted Murder of Armonti Devine Womack." Indictment, ECF No. 5 at 11. The relevant language from Count 2 is the following:

> On or about June 15, 2016, in the Western District of Virginia, for the purpose of maintaining and increasing position in the MILLAs, an enterprise engaged in racketeering activity, ... JALEN CORMARRIUS TERRY ... did attempt to murder Armonti Devine Womack in violation of Virginia Code Sections 18.2-32, 18.2-26, and 18.2-18.
>
> All in violation of Title 18, United States Code, Sections 2 and 1959(a)(5).

Indictment, ECF No. 5 at 10. Courts in the Fourth Circuit, including this one, have held that murder and attempted murder in aid of racketeering are crimes of violence for purposes of § 924(c). See United States v. Mathis, 932 F.3d 242, 265 (4th Cir. 2019); United States v. Bran, No. 3:12CR131, 2021 WL 4099011, at *4 (E.D. Va. Sept. 8, 2021); United States v. Davis, No. 4:18-cr-11, 2019 WL 3307235, at *3–7 (W.D. Va. July 23, 2019); Gordillo Portocarrero

---

review but did address the issue Terry raised about whether a RICO conspiracy is a crime of violence for purposes of 18 U.S.C. § 924(c).

v. United States, No. 1:16-cv-00763 (LMB), No. 1:10-cr-00066-1 (LMB), 2019 WL 181119, at *7–8 (E.D. Va. Jan. 11, 2019); and Cousins v. United States, 198 F.Supp.3d 621, 624–27 (E.D. Va. 2016).

For the reasons stated above, the court finds that Terry waived his right to collaterally attack his sentence on the ground that his conviction on Count 3 was unconstitutional and also finds that his argument regarding his claim is without merit. Accordingly, his motion to vacate, set aside, or correct his sentence on this basis is **DENIED**.

### C. Ineffective Assistance of Counsel

On February 24, 2022, Terry filed a motion to amend his § 2255 petition to add a claim of ineffective assistance of counsel, arguing that his attorney was ineffective because he failed explain the difference between Counts 3 and 5 of the indictment. He argues that this lack of an explanation led him to plead guilty and that if it were not for his attorney's erroneous advice he would have proceeded to trial.

The government argues that Terry's motion to amend his petition should be denied because the additional claim is untimely as it does not relate back to his original motion.[3] However, the court does not find it necessary to address this argument as Terry is not entitled to relief on the merits of his ineffective assistance of counsel claim.

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: He must show

---

[3] As set forth above, the government also argues that Terry's original motion was untimely, but the court has found that Terry is entitled to equitable tolling of the statute of limitations.

both that (1) counsel's performance fell below an objective standard of reasonableness; and (2) he was prejudiced by counsel's alleged deficient performance. Id. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 688). "'The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When a petitioner argues that he received ineffective assistance of counsel as part of a plea agreement, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lee v. United States, 582 U.S. 357, 364–65 (2017) (citing Hill v. Lockhart, 474 U.S. 52, 59 1985)). Courts will not upset a plea solely because a defendant makes a post hoc assertion that he would have pled guilty but for his attorney's deficiencies. Rather, courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee, 582 U.S. at 369.

Regarding the first prong of the test, Terry asserts that his attorney misadvised him as to the elements of Count 3 of the indictment. He claims that prior to deciding to plead

13

guilty, he asked his attorney several times whether Count 3, alleging the use of a firearm during a violent crime in aid of racketeering for attempted murder of Armonti Womack in violation of 18 U.S.C. § 924(c)(1)(A)(iii) was identical to Count 5, alleging use of a firearm during a violent crime in aid of racketeering, to wit: Assault with a dangerous weapon of Armonti Divine Womack. Mot., ECF No. 792 at 3–4. He says that his attorney assured him that the two counts were the same and he relied on that representation in deciding to plead guilty. Id. at 4.

These assertions are contradicted by Terry's testimony at the plea hearing held on March 6, 2020, that he understood what he was charged with in Counts 1 and 3, and that both counts were felonies. Plea Hr'g. Tr., ECF No. 583 at 7–8. He testified that he had gone over the terms of the plea agreement with his attorney, understood the terms of the plea agreement, and understood that the parties had agreed upon a sentencing range of 180 to 204 months. He affirmed that was given an opportunity to ask his attorney questions and to have his questions answered. Id. at 8–9, 22. He declined to ask the court any questions about the plea agreement when given an opportunity to do so and said he agreed with the terms of the plea agreement. Id. at 15–16, 30. The government read aloud the elements of Count 3 in open court and noted that it carried a maximum statutory penalty of life in prison and a $250,000 fine. Id. at 18–19. Terry accepted the terms of the plea agreement and pled guilty. Id. at 42–43.

At the sentencing hearing held on October 29, 2020, Terry affirmed that he was fully satisfied with the advice and representation of his attorney. Sent'g Hr'g Tr., ECF No. 797 at 3. Terry's attorney brought up the fact that in the Presentence Investigation Report, it was

stated that the Count 3 § 924(c) offense carried a five-year mandatory statutory minimum sentence, which was a mistake as Count 3 actually had a 10-year mandatory minimum sentence. Also, the 10-year mandatory minimum sentence was not spelled out in the plea agreement. However, the Assistant United States Attorney had properly described the statutory minimum punishment at the guilty plea hearing. Id. at 11–12. Terry's counsel said that he and Terry agreed that Count 3 had a 10-year mandatory minimum sentence. Id. at 12. Also, the fact that the sentence on Count 3 was required by statute to run consecutively to the sentence on Count 1 was not explained at the plea hearing. Id. at 13. However, the court explained the mandatory minimum sentence on Count 3 and the requirement that it run consecutively to Count 1 to Terry, but reiterated that pursuant to the plea agreement, Terry would be sentenced to between 180 and 204 months. Id. at 13–14. Terry indicated that he wanted to go forward with sentencing. Id. at 15–16.

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." Lemaster, 403 F.3d at 221 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977) (internal punctuation omitted)). Absent extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established. United States v. Rambert-Hairston, 824 F. App'x 179, 180 (4th Cir. 2020) (per curiam). There are no extraordinary circumstances present in this case that call into question the conclusion that Terry understood the terms of the plea agreement and entered into it voluntarily.

In addition, both Counts 3 and 5 alleged violations of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii) and both carried the same statutory penalties. Indictment, ECF No. 5 at 11–12. Therefore, while the two counts were not identical because Count 3 was based on attempted murder of Womack and Count 5 was based on assault with a dangerous weapon of Womack, it is unclear how Terry's counsel erred in explaining them to Terry when the only difference between the counts was apparent on the face of the indictment. Id.

Moreover, even if Terry's attorney did not explain the differences between Counts 3 and 5, Terry has not described how he was prejudiced by the lack of information. Count 5 was dismissed without prejudice on July 23, 2019, approximately seven months before Terry pled guilty. ECF No. 396. Terry has provided no explanation as to how any failure on his attorney's part to explain the differences between the counts induced him to plead guilty when he otherwise would not have done so.

## III. Conclusion

Based on the foregoing, the court **GRANTS** Terry's motion to amend or correct his § 2255 petition, ECF No. 792, and **DENIES** his motion to vacate, set aside, or correct his sentence, ECF No. 785. An appropriate Order will be entered. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to Terry.

It is so **ORDERED**.

Entered: July 7 2025

Michael F. Urbanski
Chief United States District Judge

16